# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **10 RING PRECISION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:11-cv-00663-XR** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KENNETH MELSON, Acting** | ) | |
| **Director, Bureau of Alcohol,** | ) | |
| **Tobacco, Firearms & Explosives,** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO TRANSFER VENUE, OR IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS

On or about July 12, 2011, the Bureau of Alcohol, Tobacco, Firearms, and Explosives

("ATF") issued letters to certain Federal Firearms Licensees ("FFLs") in the Southwest Border

States of New Mexico, Texas, Arizona, and California, requiring the FFLs to report, beginning

on August 14, 2011, certain information regarding multiple sales of specified semi-automatic

rifles.   On August 3, 2011, two separate actions were filed in the United States District Court for

the District of Columbia to challenge this reporting requirement, one by the National Shooting

Sports Foundation ("NSSF") and the other by the National Rifle Association ("NRA"), with two

FFLs located in Arizona as the named plaintiffs.[1]  Nat'l Shooting Sports Found. v. Melson,

---

[1]  See NRA Press Release (Aug. 5, 2011), available at
http://www.nraila.org/Legislation/Federal/Read.aspx?id=7015 (attached as Ex. 1) ("NRA filed
separate complaints in the District of Columbia, New Mexico and Texas challenging the
administration's demands.").  As the NRA indicated in its press release, it is fully funding these
lawsuits.  See also Charlie Savage, NRA Sues Over Bulk Gun Sales Rule, N.Y. Times (Aug. 3,
2011) (quoting NRA's executive vice president as stating the organization "viewed [the
requirement] as a blatant attempt by the Obama administration to pursue their gun control agenda
through back-door rule-making," and pledging that "NRA will fight them every step of the
way.").

1:11-cv-01401-RMC (attached as Ex. 2); J & G Sales, Ltd. et al. v. Melson, No.

1:11-cv-01402-BAH ("the D.D.C. action") (attached as Ex. 3).   Both complaints assert that ATF

exceeded its authority in issuing the demand letters and seek declaratory judgments and

preliminary and permanent injunctive relief.  See id.  Also on August 3, 2011, the NRA filed an

identical action in the District of New Mexico in the name of a third FFL.  Ron Peterson

Firearms, LLC v. Melson, Civil Action No. 1:11cv00678-RHS-LFG (D.N.M.) (attached as Ex.

4); see also NRA Press Release (Ex. 1).  Two days later, on August 5, 2011, NRA filed this

action.  See 10 Ring Precision, Inc. v. Melson, Civil Action No. 5:11-cv-00663-XR (attached as

Ex. 5); NRA Press Release (Ex. 1).[2]  The three identical NRA-initiated lawsuits are part of a

concerted effort by that organization to challenge ATF's action in the federal courts.  See id.

("NRA filed separate complaints in the District of Columbia, New Mexico and Texas

challenging the administration's demands.").

        In the interests of justice and judicial efficiency, Defendant Kenneth Melson, in his

official capacity as Acting Director of ATF, moves to transfer the New Mexico and Texas cases

to the United States District Court for the District of Columbia, pursuant to 28 U.S.C.

§ 1404(a).  In the alternative, Defendant respectfully requests that this Court stay this action

pending resolution of the actions filed in the District of Columbia.  Transfer of this case, indeed

of all of the cases, to the District Court for the District of Columbia promotes the interests of

justice and convenience of the parties.  It is inimical to judicial economy and the interests of

_____

        [2] The New Mexico complaint and the instant complaint differ from the complaint in the
D.D.C. action only in the identities of the plaintiffs and the addition of local counsel.  They are in
all other respects identical and were all filed by the same counsel based in the Washington, D.C.
area.

justice to allow a single organization to initiate and fully fund the filing of three identical lawsuits, to simultaneously litigate the same causes of action against the same defendant in three different federal courts.  In these circumstances, the very real potential for wasteful and duplicative litigation – and the possibility of inconsistent judgments – militate strongly in favor of transfer.

Transfer to the District Court for the District of Columbia is especially appropriate because that District is the one jurisdiction in which all of the plaintiffs in all of the lawsuits could have filed their complaints.  Defendant's principal place of business is in Washington, D.C., and the agency action that is being challenged occurred in the District of Columbia. Furthermore, all of the attorneys representing the parties (other than local counsel) are located in the Washington, D.C. area, and there are currently two cases pending in that jurisdiction.  In addition, recent statistics compiled by the Administrative Office of the United States Courts demonstrate that there are fewer pending cases per judge in the District Court for the District of Columbia than in this Court.  As a result, consolidation in the District of Columbia will best serve the convenience of the parties and promote the parties' and the courts' interest in a speedy resolution of this controversy.  Moreover, given the very early stage of this litigation, transfer will not prejudice the interest of any plaintiff in any of the actions.

For these and the reasons that follow, Defendant requests that the Court grant the motion to transfer this case to the United States District Court for the District of Columbia.  In the alternative, the Court should stay this case, at least pending resolution of the D.D.C. actions.

**ARGUMENT**

**I.    THIS CASE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  This Court has "broad discretion in deciding whether to order a transfer so long as it is within the limitations of the text of the statute, the precedents of the Supreme Court, and of the Fifth Circuit Court of Appeals."  InterAmerican Quality Foods, Inc. v. Parrot Ice Drink Products of Am., Ltd., 2010 WL 376407, at *1 (W.D. Tex. Jan. 25, 2010) (Rodriguez, J.) (citing In re Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) (en banc)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."  In re Volkswagen, 545 F.3d at 312.  Once this first factor is satisfied, courts consider whether the transfer would serve (1) the convenience of the parties and witnesses, and (2) the interest of justice.  28 U.S.C. § 1404(a).  The Fifth Circuit has explained:

> [W]e have adopted the private and public interest factors first enunciated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), . . . as appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice.  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

In re Volkswagen, 545 F.3d at 315 (internal citations and punctuation omitted).  Although consideration of these factors is "appropriate for most transfer cases, they are not necessarily

-4-

exhaustive or exclusive"; moreover, "none can be said to be of dispositive weight." Id. (citation omitted).

A transfer of this case to the District of Columbia meets these requirements and will promote these goals.

**A.      Venue and Jurisdiction Are Proper in the Transferee District.**

Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e), and the District of Columbia possesses jurisdiction over the case under 28 U.S.C. § 1331.[3]  Indeed, it is the one forum in which all of the actions could have been filed from the outset.  Defendant Kenneth Melson is Acting Director of ATF, a component of the United States Department of Justice, and has his principal place of business in Washington, D.C.  See 28 U.S.C. § 1391(e)(1) (a civil action in which a defendant is an officer or employee of the United States or any agency thereof may be brought in a judicial district in which a defendant in the action resides).  ATF has exercised its authority under 18 U.S.C. § 923(g)(5)(A), to request multi-sales reporting of certain semi-automatic rifles – the action Plaintiff challenges in this lawsuit – from its principal place of business in Washington, D.C.  Thus, venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(e)(1) and (e)(2).

There can be no dispute that D.D.C. has proper subject matter jurisdiction over this case,

---

[3] Section 1391(e) provides in relevant part that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1331 provides that district courts have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

because a federal question – the statutory authority of a government agency to take certain action – is clearly presented.  28 U.S.C. § 1331.  Indeed, by filing an identical action in the District of Columbia on behalf of two Arizona FFLs, counsel for Plaintiff concedes that both jurisdiction and venue lie in the District of Columbia.  See Compl., D.D.C. Action (Ex. 3),  ¶ 4.  Because this case could have been brought in the District of Columbia, transfer there is proper pursuant to Section 1404(a).

    **B.**    **The Private And Public Interest Factors Weigh In Favor Of Transfer To the District Court for the District of Columbia.**

    An analysis of the private and public interest factors shows that they weigh in favor of transfer.  The private concerns are largely irrelevant here because, as an examination of Plaintiff's complaint demonstrates, the present action seeks judicial review of administrative agency action.  See Compl. ¶ 4 (premising jurisdiction on the review provision of the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"), and the Declaratory Judgment Act).  It is well settled that "[t]he scope of judicial review under the APA is limited to the administrative record compiled by the agency."  Aquifer Guardians in Urban Areas v. Fed. Highway Admin. _ F. Supp. 2d __, 2011 WL 1542834, at *14 (W.D. Tex. April 22, 2011) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973); see also Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985).  Thus, the sole "source of proof" will be the record compiled by the agency, and the private concerns are irrelevant or neutral to the transfer determination.  Moreover, having already initiated a related action in the District of Columbia, counsel for Plaintiff cannot argue that pursuing the case in that forum would be unduly inconvenient, or that it would be unable to bear the expense of litigation in that judicial district.  Plaintiff will not be prejudiced by a transfer

because this case is in the very earliest phase of litigation.  Additionally, Plaintiff's counsel

(except for local counsel) are based in Fairfax, Virginia, a suburb of Washington, D.C., and as

noted above, Defendant has his principal place of business in Washington, D.C.  All these factors

weigh in favor of transfer to the District of Columbia.

 The public interest in a consolidated proceeding compels transfer of this case

to the District of Columbia.  Permitting this lawsuit and the D.D.C. and New Mexico actions to

proceed simultaneously in three different fora will virtually triple the energy and resources

required of the parties and the judicial system to resolve this dispute.  The U.S. Supreme Court

has long recognized that Section 1404(a) is intended to protect against such a scenario.  See

Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases

involving precisely the same issues are simultaneously pending in different District Courts leads

to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quoting

Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)).  The objectives of Section

1404(a) are "to prevent the waste of time, energy and money and to protect . . . the public against

unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)

(internal quotations omitted).  Such unnecessary inconvenience and expense of judicial resources

is even more pronounced in a situation such as this one, where the complaints in all three suits,

plus the NSSF lawsuit also filed in the District Court for the District of Columbia, include in

their Prayers for Relief claims for both preliminary and permanent injunctive relief.  See Compl.

at Prayer for Relief; Exs. 2-4 at Prayer for Relief.

 Moreover, two related cases are currently pending in the District Court for the District of

Columbia.  Consolidation will allow the District of Columbia to address the issues presented in

the three identically-phrased NRA complaints, as well as the NSSF case, simultaneously.  The

Supreme Court and courts in the Fifth Circuit have repeatedly emphasized that such a

consolidated approach is to be preferred over costly multi-front litigation.  See West Gulf

Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 729 (5th Cir. 1985); DataTreasury

Corp. v. First Data Corp., 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) ("Transfer [under 28

U.S.C. § 1404(a)] is particularly appropriate where related cases involving the same issues are

pending in another court."); id. ("Since Continental Grain, a number of courts, including the Fifth

Circuit, have held that the existence of related litigation in a transferee court is a factor that

weighs strongly in favor of transfer.") (citing cases) (emphasis added); Doubletree Partners, L.P.

v. Land America American Title Co., 2008 WL 5119599, at *6 (N.D. Tex. Dec. 3, 2008)

("Where related litigation is pending in the transferee court, the 'interest of justice' may dictate

transfer notwithstanding any inconvenience to the parties and witnesses.").

Moreover, permitting three identical lawsuits to be separately litigated could lead to

inconsistent judgments: one or more holding that ATF's action exceeds the scope of its authority

under 18 U.S.C. § 923(g)(5)(A), and one or more holding that it does not.[4]  This scenario is one

that Section 1404(a) seeks to guard against.  See Convergence Technologies (USA), LLC v.

Microloops Corp., 711 F. Supp. 2d 626, 642 (E.D. Va. 2010) ("[I]t is well-settled that transfer

under § 1404(a) is generally in the interest of justice if a decision not to transfer would lead to

courts rendering inconsistent judgments on the same issue."); accord Colorado River Water

Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (dictum) (when two cases pending

---

[4] Moreover, one court could issue a preliminary injunction while others deny such relief.
As a practical matter, this outcome would lead to inconsistent implementation of ATF's multiple
sales reporting requirement.

in two different federal district courts raise the same issues, "the general principle is to avoid

duplicative litigation").

 Finally, transfer to the District of Columbia is appropriate because it will promote an

efficient resolution of this controversy.  Recent statistics compiled by the Administrative Office

of United States Courts demonstrate that there are fewer pending cases per judge in the District

of the District of Columbia than in this Court.  See www.uscourts.gov/fcmstat/index.html

(relevant data attached hereto as Ex. 6) (267 pending cases per judge in the District of Columbia,

as opposed to 450 in the Western District of Texas).  Indeed, the Western District of Texas has

been cited as a "judicial emergency" district due to pending cases and existing vacancies.  See

www.uscourts.gov/uscourts/JudgesJudgeships/Vacancies/reports/jdarevac.html (attached as Ex.

7).  Courts consider docket congestion in determining whether to grant a motion to transfer

venue.  See In re Volkswagen, 545 F.3d at 315 (considering "the administrative difficulties

flowing from court congestion" as a factor determining whether transfer is "in the interests of

justice"); Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986) (collecting cases)

("Factors traditionally considered in an 'interest of justice' analysis relate to the efficient

administration of the court system.  For example, the interest of justice may be served by a

transfer to a district where the litigants are more likely to receive a speedy trial.").  Accordingly,

consolidating the pending cases in the District of Columbia will serve "the interests of justice" by

promoting an efficient resolution of this issue.[5]

---

[5] Similarly, the other public interest factors weigh in favor of transfer (or are at most
neutral).  The interest in having local interests decided at home does not weigh against transfer
here because the issue here is one of federal regulation of firearms and applies to federally-
licensed dealers not just in Texas but in four States.  As to the familiarity of the forum with the
law that will govern the case, and potential conflicts of law, these factors are neutral because

Whatever NRA's purpose is in filing duplicative lawsuits in three jurisdictions, the situation calls for a transfer that will permit consolidation of these overlapping actions. See Coffey, 796 F.2d at 221 ("[R]elated litigation should be transferred to a forum where consolidation is feasible.") (citations omitted). Because Plaintiffs in all three actions raise the same statutory challenge to ATF's authority to require multi-sales reporting of certain semi-automatic rifles, and the District of Columbia is the forum in which all four challenges could have been filed, consolidation is feasible pursuant to Fed. R. Civ. P. 42(a).[6]  Transfer is accordingly appropriate.

Thus, to avoid wasteful and duplicative litigation, pretermit the possibility of inconsistent judgments, and to promote judicial economy, as well as the parties' (and the public's) interest in a speedy resolution of NRA's claims against Defendant, this case should be transferred to the District of Columbia, where it and the pending District of Columbia actions (plus the New Mexico lawsuit) can be consolidated and decided by a single federal court.

**D.    The Court Should Also Transfer This Case Because the First-to-File Rule Applies.**

The Fifth Circuit has adopted a first-to-file rule, providing that "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999); see also Save Power Ltd. v. Syntek Finance Corp., 121 F.3d

---

federal law governs this case.

[6] Federal Rule of Civil Procedure 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court . . . it may order all the actions consolidated . . . ."

947, 950 (5th Cir. 1997).  The first-to-file rule is "grounded in principles of comity and sound

judicial administration," which requires "courts of coordinate jurisdiction and equal rank [ ] to

exercise care to avoid interference with each other's affairs."  Save Power, 121 F.3d at 950

(quoting West Gulf, 751 F.2d at 728).  The rule seeks: (1) to "avoid the waste of duplication"; (2)

to "avoid rulings which may trench upon the authority of sister courts"; and (3) to "avoid

piecemeal resolution of issues that call for a uniform result."  Save Power, 121 F.3d at 950.

The two actions "need not be identical for the first-to-file rule to apply."  O'Hare v.

Vulcan Capital, L.L.C., 2007 WL 996437, at *2 (W.D. Tex. Feb. 20, 2007) (citing Save Power,

121 F.3d at 950, and Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994,

997 (E.D. Tex. 1993)).  "The two actions must only involve closely related questions, common

subject matter, or core issues that substantially overlap."  Id. (citing Texas Instruments, 815 F.

Supp. at 997.  "Courts have noted that a substantial relationship exists between two suits where

the issues, though not identical, are similar enough that the cases would be consolidated if filed

in the same court."  Id.  (citing Save Power, 121 F .3d at 950; Mann Mfg., Inc. v. Hortex, Inc.,

439 F.2d 403, 408 n.6 (5th Cir. 1971)).

Here, the claims presented in the present case and the D.D.C. action not only

"substantially overlap," but are identical.[7]  NRA has announced that all three cases are part of a

single coordinated effort.  See NRA Press Release (Ex. 1) ("NRA filed separate complaints in the

District of Columbia, New Mexico and Texas challenging the administration's demands.").

Indeed, the very same claims are advanced in all three cases against the same defendant, and the

---

[7] Moreover, they raise the same claims as those advanced in the first action filed in the
District of Columbia.

complaints are identically phrased, save for the identity of the respective plaintiffs.  Compare

Compl. with Exs. 3, 4.  This is unsurprising, given that the same counsel who filed the D.D.C.

action and the New Mexico lawsuit are also bringing the present case (with the addition of a third

attorney serving as local counsel).  And although Plaintiff is not a party to the D.D.C. action, that

fact alone does not make transfer to that forum inappropriate.  NRA filed both lawsuits and, as

the Fifth Circuit has explained:

> Complete identity of parties is not required for dismissal or transfer of a case filed
> subsequently to a substantially related action.  See West Gulf, 751 F.2d at 731 n.5
> (noting that incomplete identity of parties does not mandate that two "essentially
> identical" actions remain pending simultaneously where complete relief was
> nevertheless available in one forum and the missing parties probably could be
> made parties to the action in that forum); see also National Health Fed'n v.
> Weinberger, 518 F.2d 711 (7th Cir.1975) (dismissing second-filed action without
> prejudice even though it involved different plaintiffs than the first-filed action).

Save Power, 121 F.3d at 951.

Finally, because the claims advanced against Defendant are duplicative of the claims

advanced in the D.D.C. action, transferring to that forum would avoid the unnecessary waste of

duplicative actions.  The identical nature of the claims in both cases would allow for

determinations in different courts that could create direct and irreconcilable conflict.  Thus, any

ruling by this Court would "trench upon the authority" of another district court.  Save Power, 121

F.3d at 950.

In sum, the Court should transfer this case to the District of Columbia pursuant to 28

U.S.C. § 1404 and the first-to-file rule.

## II.     IF THE CASE IS NOT TRANSFERRED, IT SHOULD BE STAYED.

If the Court denies Defendant's motion to transfer, then, in the alternative, it should stay

this proceeding pending the outcome of the D.D.C. action. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "When related cases are pending in two federal courts, there is an inherent power in each of those courts, when presented with an appropriate motion, to stay the proceedings before it in deference to the related action." Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc., 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004) (citing Colorado River, 424 U.S. at 817). "Such questions of docket management are left to the sound discretion of the district court, and it is the district court's responsibility to weigh the competing interests of the parties relating to the appropriateness of a stay." Id. (citing Landis, 299 U.S. at 255).

A stay of this case pending resolution of the D.D.C. action would serve the interests of judicial economy by permitting the litigants to proceed in the less-congested forum. Accordingly, if this case is not transferred, it should be stayed at least until the D.D.C. action is resolved.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion and transfer this case to the United States District Court for the District of Columbia. In the alternative, this Court should stay the action at least until the District of Columbia court disposes of that case.

Dated: August 12, 2011                       Respectfully submitted,


                                             TONY WEST
                                             Assistant Attorney General

                                             JOHN MURPHY
                                             United States Attorney

JOHN F. PANISZCZYN (Texas Bar No. 15443855)
Assistant United States Attorney


     /s/ Daniel Riess
SANDRA M. SCHRAIBMAN
Assistant Director
DANIEL RIESS (Texas Bar No. 24037359)
JESSICA LEINWAND
LESLEY FARBY
Trial Attorneys
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendant*


## CERTIFICATE OF CONFERENCE

On August 12, 2011, counsel for Defendant telephonically contacted counsel for Plaintiff to discuss Defendant's Motion to Transfer Venue or, in the Alternative, for a Stay of Proceedings. Counsel for Plaintiff indicated that he would not agree to the motion and would be filing a response in opposition.

     /s/ Daniel Riess
     Daniel Riess

**<u>CERTIFICATE OF SERVICE</u>**

On August 12, 2011, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

  /s/ Daniel Riess      
Daniel Riess