IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| 10 RING PRECISION, INC. )<br>)<br>         Plaintiff     )<br>)<br>    v.                  )<br>)<br>KENNETH MELSON         )<br>)<br>         Defendant     ) | No. 5:11-cv-00663-XR |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER
VENUE OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**

COMES NOW Plaintiff, by counsel, and opposes Defendant's motion to transfer venue or, in the alternative, for a stay of proceedings.

INTRODUCTION

Defendant starts out its motion with a false premise which infects the entirety of its motion: that the National Rifle Association ("NRA") "filed" *J&G Sales, Ltd., et al.* v. *Melson*, No. 1:11-cv-01402-BAH (Def. Mot. 1) and that "NRA filed this action." Def. Mot. 2. In fact, NRA's sole involvement was to provide funding. The NRA Press Release clearly states that NRA is "fully funding and supporting" the cases, but NRA is plainly not a party, nor are any NRA employees representing any of the plaintiffs.[1] On the contrary, the plaintiffs are represented by independent counsel whose ethical duty is to each plaintiff, not to the NRA.

Texas Disciplinary Rules of Professional Conduct, Rule 1.08(e) (Conflict of Interest: Prohibited Transactions), provides that a lawyer may accept

---

[1] While the NRA Press Release states that NRA "filed" separate complaints, NRA did not "file" any case within the meaning of Rule 3, Fed.R. Civ.Pro.; the cases were filed by counsel for the respective plaintiffs. See *Jarrett* v. *US Sprint Communications Co.*, 22 F.3d 256, 259 (10th Cir. 1994)("courts have deemed the complaint 'filed' upon presentation to the court clerk") and *Jordan* v. *United States*, 694 F.2d 833, 837, n.7 (D.C. Cir. 1982)(Rule 3 "requires that the *plaintiff* do nothing more to commence an action in federal court than to file the complaint.")(emphasis added).

-1-

compensation for representing a client from one other than the client if the client consents and "there is no interference with the lawyer's independence of professional judgment . . . ."  Comment 12 to Rule 1.06 states in part:

> A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See Rule 1.08(e).

Indeed, the Supreme Court has recognized that non-profit public interest organizations may provide representation to others because "the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion."  *NAACP v. Button,* 371 U.S. 415, 429 (1963).

### ARGUMENT

Plaintiff does not dispute that this action might have been brought in the District of Columbia.[2]  That being said, the private and public interest factors do not weigh in favor of transfer to the District of Columbia.

### Applicable Case Law

In *In re Volkswagen of Am, Inc.*, 545 F.3d 304 (5th Cir. 2008)(*en banc*), the court explained that the "underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  545 F.3d at 313.[3]  Thus, the overarching theme of a motion under

---

[2] Defendant states that "ATF has exercised its authority under 18 U.S.C. § 923(g)(5)(A), to request multi-sales reporting of certain semi-automatic rifles - the action Plaintiff challenges in this lawsuit - from its principal place of business in Washington, D.C." Def. Mot. 5.  The letter to Plaintiff, however, was signed by Charles Houser, Chief, National Tracing Center. According to ATF's website, ww.atf.gov, the National Tracing Center is located at 244 Needy Road, Martinsburg, West Virginia 25405.

[3] *In re Volkswagen of Am, Inc.* explained the history of § 1404(a) as follows: "Shortly after the [Supreme Court's decision in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947)], in 1948, the venue transfer statute became effective."  545 F.3d at 313.  *Gilbert* involved the doctrine of forum *non conveniens*.  *Gilbert* noted that the doctrine is aimed at plaintiffs who "resort to a strategy of forcing the trial at a most inconvenient place for

§ 1404(a) must be whether a defendant is subjected to an inconvenient venue, and analysis of the private and public interest factors must be undertaken with that goal in mind.  Further, *In re Volkswagen of Am, Inc.* observed that, "[a]lthough a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *In re Volkswagen of Am, Inc.*, 545 F.3d at 314, n.10.  This "good cause" burden:

> reflects the appropriate deference to which the plaintiff's choice of venue is entitled.  When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice."  Thus, *when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected*.

545 F.3d at 315 (emphasis added).

The Fifth Circuit has "adopted the private and public interest factors first enunciated" in *Gilbert*, *supra*, "as appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice."  545 F.3d at 315.  The private interest factors are:

> "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." (Citation omitted).

545 F.3d at 315.

The public interest factors are:

> "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests

---

an adversary . . . ."  330 U.S. at 507.  *Gilbert* further explained that a plaintiff "may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy."  330 U.S. at 508.

      decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." (Citation omitted).

545 F.3d at 315.

### Application Of The Case Law Standards To Plaintiff

As noted above, the plaintiff's choice of venue "places a significant burden on the movant to show good cause for the transfer." 545 F.3d at 314, n.10. Defendant has not met that burden. Most significantly, Defendant has not even attempted to show that litigating this action in this court would be inconvenient to Defendant. Yet the "underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." 545 F.3d at 313. Similarly, *Gilbert* noted that the doctrine of *forum non conveniens* is aimed at plaintiffs who "resort to a strategy of forcing the trial at a most inconvenient place for an adversary" (330 U.S. at 507) because a plaintiff "may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." 330 U.S. at 508. Defendant instead argues that "counsel for Plaintiff cannot argue that pursuing the case in [the District of Columbia] would be unduly inconvenient . . . ." Def. Mot. 6. In fact, pursuing the case in the District of Columbia *would be* unduly inconvenient to Plaintiff, who is a resident of San Antonio.

Absent even an assertion that litigating in this court would be inconvenient for Defendant – which it clearly would not – this court need go no further, and should deny Defendant's motion.

An analysis of the private and public interest factors also shows that the instant case should not be transferred.

Turning first to the private interest factors, the "source of proof"

-4-

will not exclusively be the "record compiled by the agency" as argued by Defendant. Def. Mot. 6. If, as Plaintiff expects, Defendant raises an issue with respect to Plaintiff's standing, the only "source of proof" will be Plaintiff. Moreover, if there is an issue with respect to Defendant's use of the records gathered, the source of that proof will be in Martinsburg, West Virginia, the location of the National Tracing Center (the chief of which, Charles Houser, sent the letter at issue) and the location to which the letter requires the forms to be sent. According to ATF's website, ww.atf.gov, the National Tracing Center is located at 244 Needy Road, Martinsburg, West Virginia 25405.. Thus, this factor weighs in favor of not transferring venue, or at least is neutral so that it does not assist Defendant in overcoming the "significant burden on the movant to show good cause for the transfer." *In re Volkswagen of Am, Inc.*, 545 F.3d at 314, n.10.

Similarly, because any witnesses who might be necessary would either be in San Antonio or Martinsburg, West Virginia, the "availability of compulsory process to secure the attendance of witnesses" factor is at best neutral so that it does not assist Defendant in overcoming the "significant burden on the movant to show good cause for the transfer." *In re Volkswagen of Am, Inc.*, 545 F.3d at 314, n.10. The "cost of attendance for willing witnesses" factor also weighs in favor of not transferring venue because the only witnesses for Plaintiff are in San Antonio and potential witnesses for Defendant would be in West Virginia. Finally, Plaintiff certainly has a right to appear at all proceedings in this case which take place in open court, but, if the case is transferred to the District of Columbia, Plaintiff will be deprived of that right because of the need to travel from San Antonio to the District of Columbia, even though the proceedings should be "'easy, expeditious and inexpensive.'" *In re Volkswagen of Am, Inc.*, 545 F.3d at 315.

Turning to the public interest factors. Defendant argues that § 1404(a) "is intended to protect against" a scenario where actions "proceed simultaneously in three different fora," citing *Ferens v. John Deere Co.*, 494 U.S. 516 (1990) (which quoted from *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960)("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.")). Def. Mot. 7. But both *Ferens* and *Continental Grain Co.* involved actions in different venues concerning the same parties and arising from the same set of operative facts.[4] *Continental Grain Co.* emphasized that the cases it considered were "inseparable parts of one single 'civil action' . . . ." 364 U.S. at 27. By contrast, the instant case and the case filed in the District of Columbia do not involve the same parties bringing actions arising from the same set of operative facts and thus are not "inseparable parts of one single 'civil action' . . . ."

Defendant also cites to *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985) and *DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591 (N.D. Tex. 2003). Def. Mot. 8. As with *Ferens* and *Continental Grain Co.*, these cases also involved actions in different venues concerning the same parties and arising from the same set of operative facts. Moreover, *West Gulf Maritime Ass'n* did not even address § 1404(a); it involved a motion to dismiss a later-filed case involving the same parties and a breach

---

[4] In *Ferens*, Ferens sued Deere in federal court in Pennsylvania (raising contract and warranty claims), then sued Deere in federal court in Mississippi (alleging negligence and products liability), and then sought to transfer the Mississippi case to the Pennsylvania federal court. In *Continental Grain Co.*, as a result of the sinking of a barge loaded by a cargo owner, the barge owner brought an action against the cargo owner in Tennessee state court (which was transferred to a Tennessee federal court), and the cargo owner brought an action against the barge owner in Louisiana federal court.

-6-

of the same contract on the basis of comity.

What Defendant has not cited to is any decision where multiple plaintiffs have challenged the same unlawful government action in different venues and an appellate court has held that the cases should have all been transferred to a single venue. Indeed, such litigation is routinely brought in multiple venues and not transferred to a single venue merely because multiple plaintiffs have challenged the same unlawful government action in different venues. See *e.g.*, *Printz v. United States,* 521 U.S. 898, 904 (1997)("Petitioners Jay Printz and Richard Mack, the CLEOs for Ravalli County, Montana, and Graham County, Arizona, respectively, filed separate actions challenging the constitutionality of the Brady Act's interim provisions.").[5]

Defendant asserts that "permitting three identical lawsuits to be separately litigated could lead to inconsistent judgments," citing *Convergence Technologies (USA) v. Microloops Corp.,* 711 F. Supp. 2d 626, 639 (E.D. Va. 2010). Def. Mot. 8. *Convergence Technologies (USA)* presented a wholly different situation than the instant case and thus is not useful guidance. In *Convergence Technologies (USA)*, the plaintiff sued four defendants for infringement of a single patent; one defendant (Sapphire) was not served (and was thus dismissed), two defendants (Microloops and Dynatron) were not subject to the personal jurisdiction of the Virginia court, and the last defendant (HP) was subject to the personal jurisdiction of the Virginia court. The court thus concluded that it had to transfer venue, under § 1406(a) (not § 1404(a)), to California as to Microloops and Dynatron. The court further

---

[5] The court can also take judicial notice of the fact that there are currently challenges in at least three states against the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), *amended by* Health Care and Education Reconciliation Act of 2010 ("HCERA"), Pub. L. No. 111-152, 124 Stat. 1029 (2010), all involving the government as defendant and the same legal issue.

concluded that it would transfer the entire case to California, rather than allow the case to go forward against only HP in Virginia, because such transfer "avoids the prospect that inconsistent judgments will be rendered on identical issues." 711 F. Supp. 2d at 642. The material facts in the case at bar are not analogous to those in *Convergence Technologies (USA)* because there was only a single plaintiff in *Convergence Technologies (USA)* and the same patent was at issue. In the case at bar, by contrast, there are different plaintiffs who will have different customers.[6] Moreover, potentially inconsistent results inevitably flow from having multiple district courts and multiple circuits, with the Supreme Court resolving circuit conflicts. Multiple decisions on a subject from different jurisdictions, at times inconsistent, are in fact a significant aspect of the development of American jurisprudence.

Defendant argues that transfer to the District of Columbia "will promote an efficient resolution of this controversy," citing to the case load of this court and the District of Columbia court. Def. Mot. 9. Defendant apparently relies on *In re Volkswagen of Am, Inc*.'s first public interest factor ("the administrative difficulties flowing from court congestion"). This factor was first enunciated in *Gilbert*, *supra*, which characterized it as follows:

> Administrative difficulties follow for courts when litigation is piled up in congested centers *instead of being handled at its origin*. . . . In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

330 U.S. at 508-509 (emphasis added).

Thus, *Gilbert* disapproved the filing of suits in jurisdictions which

---

[6] *Convergence Technologies (USA)* stated that "a plaintiff's choice of its home forum is ordinarily given substantial weight in the transfer analysis . . . ." 711 F. Supp. 2d at 641.

were congested instead of being litigated in the jurisdiction where the case arose, based on its concern that a plaintiff "may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy."  330 U.S. at 508.  In the case at bar, while this court is the more congested court, it is also the jurisdiction where the plaintiff resides, where the plaintiff has suffered injury, and where plaintiff's customers (whose privacy interests are very much at stake)[7] are located.  Thus, this is case which "touch[es] the affairs of many persons" in this jurisdiction, and should, therefore, be heard in this court so that it is in the "view and reach" of those affected.  Accordingly, the relative congestion of this court and the District of Columbia court should be accorded little, if any, weight in the analysis of whether Defendant has met his "significant burden" to show "good cause" for a transfer.

    The next public interest factor ("the local interest in having localized interests decided at home") also weighs against transfer.  The report required to be filed which is at issue in this case affects not only Plaintiff (due to its increased workload to comply), but also the privacy interests of Plaintiff's customers (who are likely to be residents of this jurisdiction because the sales for which reports must be filed are sales that occur in person on Plaintiff's premises) because their personal information (name, residence address, sex, race, identification number, identification type,

---

    [7] Plaintiff may represent its customers' privacy interests. *Powers v. Ohio,* 499 U.S. 400, 410-411 (1991)("We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: the litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute (citation omitted); the litigant must have a close relation to the third party (citation omitted); and there must exist some hindrance to the third party's ability to protect his or her own interests.(citation omitted).").

identification State, date and place of birth) as well as detailed information concerning the firearms purchased (serial numbers, manufacturers, importers, models, and calibers) is required to be reported and will be maintained by the ATF in a central database.  The fact that the issue will involve federal law does not justify transfer to the District of Columbia because the District of Columbia court has no greater expertise in interpreting federal law than this court.

In sum, Defendant has not met his "significant burden" to show "good cause" for a transfer.  Accordingly, this court should adhere to the conclusion of *In re Volkswagen of Am, Inc.*: "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  545 F.3d at 315.

### The First-To-File Rule Does Not Apply

Defendant asserts that this court should follow the first-to-file rule for related cases, citing *Cadle Company* v. *Whataburger of Alice, Inc., et al.*, 174 F.3d 599 (5th Cir. 1999) and *Save Power Ltd.* V. *Syntek Finance Corp.*, 121 F.3d 947 (5th Cir. 1997).  Neither case supports transfer to the District of Columbia court.

In *Cadle Company*, Andrews (one of the defendants) had filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas on 14 June 1994; Cadle filed several claims in those proceedings. Cadle later filed the complaint (in this court) which was the subject of the appeal on 23 December 1997 against Andrews and others.  This court dismissed that complaint because "the issues pending before the bankruptcy court substantially overlapped those raised by the suit before it."  174 F.3d at 602.  Citing *West Gulf Maritime Ass'n* v. *ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)("The concern manifestly is to avoid the waste of

duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result"), the Fifth Circuit directed this court to transfer the case to the bankruptcy court.

The instant case is not governed by *Cadle Company* because the parties in the instant case and in the District of Columbia cases are not the same, so that there is no possibility of either "rulings which may trench upon the authority of sister courts" or "piecemeal resolution of issues that call for a uniform result . . . ." The fact that this court and the District of Columbia court may reach different results on the merits is not a basis for application of the first-to-file rule because such a possibility does not risk either "rulings which may trench upon the authority of sister courts" or "piecemeal resolution of issues that call for a uniform result . . . ."

Relying on *West Gulf Maritime Ass'n*, *supra*, *Save Power Ltd.* reached the same result as *Cadle Company* for the same reason:

> Both the Original Action and the present case center on the question whether Save Power can proceed with foreclosure on any or all of its security interest in the assets of Pursuit under the terms of the Subordination Agreement.

121 F.3d at 951.[8]

---

[8] The court noted that the "fact that Syntek is not a party to the Original Action does not undermine the appropriateness of transfer in view of all the facts of this case." 121 F.3d at 951. The court explained:

> Syntek filed a motion for leave to intervene in the Original Action on September 11, 1995, but withdrew the motion before Save Power had filed a response and before Judge Means had ruled on it. Although Syntek claims that it was unable to intervene in the Original Action as a result of Save Power's opposition to its motion, the procedural history of the Original Action does not bear this out. Syntek's interest in the Original Action, moreover, was represented to the court via Pursuit, which faced the likelihood of being put out of business if Save Power were not enjoined from foreclosure.

*Id.*

Notably, Defendant's does not even attempt to argue – as he could not – that there is even a remote possibility that not transferring this case to the District of Columbia would risk either "rulings which may trench upon the authority of sister courts" or "piecemeal resolution of issues that call for a uniform result . . . ."  Without such a possibility, the first-to-file rule is not implicated.

### If The Case Is Not Transferred, It Should Not Be Stayed

Defendant requests that this case should be stayed if it is not transferred, but offers no sound reason for a stay, asserting only that a stay would permit the "litigants to proceed in the less congested forum."  Def. Mot. 13.  A stay, however, would wholly prevent Plaintiff from proceeding at all because it is not a litigant in the case in the District of Columbia.  The court should thus deny Defendant's request for a stay if the case is not transferred.

### CONCLUSION

The court should deny Defendant's motion.

Respectfully submitted,

10 RING PRECISION, INC.
By Counsel

/s/
Allen Halbrook
State Bar No. 08721300
Sneed, Vine & Perry, P.C.
901 Congress Avenue
Austin, Texas 78701
(512) 476-6955
(512) 476-1825 (facsimile)
ahalbrook@sneedvine.com

```
                              /s/_____
                              Richard E. Gardiner (pro hac vice)
                              Virginia Bar # 19114
                              Suite 403
                              3925 Chain Bridge Road
                              Fairfax, VA  22030
                              (703) 352-7276
                              (703) 359-0938 (fax)
                              regardiner@cox.net


                              /s/_____
                              Stephen P. Halbrook (pro hac vice)
                              Virginia Bar # 18075
                              Suite 403
                              3925 Chain Bridge Road
                              Fairfax, VA  22030
                              (703) 352-7276
                              (703) 359-0938 (fax)
                              protell@aol.com
```

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS was filed electronically through the CM/ECF system, which caused Daniel Riess, Trial Attorney, to be served by electronic means this 29th day of August, 2011.

                                          <u>/s/Allen Halbrook</u>
                                          Allen Halbrook