**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **10 RING PRECISION, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 5:11-cv-00663-XR** |
| ) | |
| **v.** ) | |
| ) | |
| **B. TODD JONES,**[1] **Acting** ) | |
| **Director, Bureau of Alcohol,** ) | |
| **Tobacco, Firearms & Explosives,** ) | |
| **in his official capacity,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER
VENUE, OR IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**

The Supreme Court has made clear: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [28 U.S.C.] § 1404(a) was designed to prevent." Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960). Since that holding, "a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs *strongly* in favor of transfer" of venue under 28 U.S.C. § 1404(a). DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (emphasis added) (citing, inter alia, Jarvis Christian Coll. v. Exxon Corp., 845 F.2d 523, 528-29 (5th Cir. 1988)).

Here, there are not two but *three* cases involving precisely the same issues that are

---

[1] B. Todd Jones has been substituted as the defendant in this matter for Kenneth Melson, pursuant to Federal Rule of Civil Procedure 25(d).

simultaneously pending in three different district courts.[2]  This represents a complete waste of limited judicial resources and of the resources of the parties, particularly given that the United States District Court for the Western District of Texas has been declared a "judicial emergency" district due to its pending caseload and existing vacancies.  Transfer to the United States District Court for the District of Columbia is especially appropriate here, where three essentially identical complaints were filed against a federal agency residing in the District of Columbia by the same counsel from the Washington, D.C. area, and were filed to propound the interests of the National Rifle Association ("NRA"), which is headquartered in the Washington, D.C. area.  While Plaintiff here attempts to minimize the NRA's interests and speaks of the NRA as being at most a funding source, it is beyond dispute that the NRA is fully funding and "promoting" its broader organizational interests through these lawsuits.  In fact, the NRA has publicly announced on numerous occasions that the three lawsuits are NRA lawsuits.[3]

_____

[2]  The fourth lawsuit, Nat'l Shooting Sports Found. ("NSSF") v. Jones (D.D.C.), Civil Action No. 1:11-cv-01401-RMC, was consolidated with J & G Sales, Ltd. et al. v. Jones (D.D.C.), Civil Action No. 1:11-cv-01402-BAH, on August 18, 2011.  See NSSF v. Jones, Order Consolidating Cases (attached as Ex. 1).

[3] See NRA Institute for Legislative Action ("NRA-ILA"), Introducing the NRA-ILA Legal Update, Multiple Rifle Sales Reporting, available at http://www.nraila.org/2Alitigation/ ("In response to the Obama administration's recent announcement that it will force the reporting of multiple rifle sales by federal firearm licensees in the Southwest border states, *NRA-ILA filed three lawsuits* . . . in federal court in Washington, D.C., Texas and New Mexico challenging the Bureau of Alcohol, Tobacco, Firearms and Explosives' authority to demand this information.") (emphasis added); NRA News, Wayne LaPierre: NRA Files Lawsuit Against BATFE (Aug. 4, 2011), at 0:04-0:30, available at http://home.nra.org/#/nranews (Follow "Issues" hyperlink, then "BATFE," then "View videos") (Interviewer: "All right, so what can you tell us about *the NRA filing suit* yesterday, really going after the Obama Administration for these new reporting requirements for FFLs on the border?  NRA Executive Vice President and CEO Wayne LaPierre: "Well, I mean it's another step by this administration which hates the Second Amendment to inch their anti-gun agenda one more step down the road.  And – they want *a fight with the NRA*, by gosh, they got it!  *We're going to court*."); NRA News, BATFE Gun Reporting Requirement

Furthermore, the public and private interest factors that in other circumstances might warrant denial of transfer do not apply here.  This is a case filed under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), for which discovery would be inappropriate because review is limited to the administrative record.   The issue here concerns federal regulation of firearms that applies not just to dealers in this district but to dealers throughout Texas and three other States.  Plaintiff's attempt to raise the amorphous specter of potential discovery into standing or otherwise is insufficient to defeat Defendant's Motion to Transfer and separate this case from the ones already filed in the District of Columbia, particularly where the same claims on behalf of two Arizona firearms dealers did not result in the filing of J & G Sales, Ltd. et al. v. Jones in Arizona.  There will be no need for compulsory process to secure the attendance of witnesses.  There are no localized interests in having this case heard in this district. The fact that Plaintiff has a business in this district has no definitive relevance here, as highlighted again by the fact that the same counsel filed J & G Sales on behalf of two Arizona dealers in the District of Columbia.

In addition, and importantly, the consolidated actions in the District of Columbia, now known as NSSF v. Jones, were filed first and are moving quickly.  The Court in these consolidated actions held a hearing on September 1, and denied the plaintiffs' motions for

---

Challenged in Court (Aug. 3, 2011), at 0:01-0:11, 9:10-9:28, available at http://home.nra.org/#/nranews (Follow "Issues" hyperlink, then "BATFE," then "View videos") (Interviewer: "Let's get right to the big story of the day: *the NRA filing suit* challenging these new rules from the Obama Administration, the multiple reporting requirements for long guns. . . . Stephen Halbrook, counsel for Plaintiff: "We do have the case filed in U.S. District Court for the District of Columbia.  And I can tell you that you can look for more litigation to come in other places on this.  We'll keep you posted on that.  But we're gonna – we're taking them to court, the NRA is promoting these cases. . . .").

preliminary injunctive relief because the plaintiffs had failed to demonstrate irreparable harm.
See NSSF v. Jones, Order on Prelim. Inj. and Schedule (Sept. 2, 2011) (attached as Ex. 2).  The
Court did note, however, that expedition of the case and hearing on the merits would be
appropriate and set an expedited briefing schedule under which briefing on the merits will be
completed by October 21, and oral argument will be held on October 25.  See Ex. 2 at 7.  Thus,
the District Court for the District of Columbia will be in a position to issue an opinion on the
merits after October 25, 2011, and the issue could be raised shortly thereafter to the Court of
Appeals.  Additionally, during the September 1 oral argument, the Court indicated its willingness
to accept transfer of the Texas and New Mexico cases in order to ensure the speedy and efficient
resolution of these cases while also minimizing the burden on the courts in Texas and New
Mexico and avoiding the potential for inconsistent judgments.

Thus, this Court should transfer this action to the United States District Court for the
District of Columbia in the interests of judicial economy and convenience of the parties.

**ARGUMENT**

## I.      THIS CASE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.

"For the convenience of parties and witnesses, in the interest of justice, a district court
may transfer any civil action to any other district or division where it might have been brought."
28 U.S.C. § 1404(a).  The Court has "broad discretion in deciding whether to order a transfer so
long as it is within the limitations of the text of the statute, the precedents of the Supreme Court,
and of the Fifth Circuit."  InterAmerican Quality Foods, Inc. v. Parrot Ice Drink Products of Am.,
Ltd., 2010 WL 376407, at *1 (W.D. Tex. Jan. 25, 2010) (Rodriguez, J.) (citing In re Volkswagen

of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) (en banc).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." In re Volkswagen, 545 F.3d at 312.  Because Plaintiff "does not dispute that this action might have been brought in the District of Columbia," Pl. Opp. at 2, this preliminary requirement is satisfied.  The Court's analysis turns on whether the transfer would serve (1) the convenience of the parties and witnesses, and (2) the interest of justice.  28 U.S.C. § 1404(a).  The Fifth Circuit has explained:

> [W]e have adopted the private and public interest factors first enunciated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), . . . as appropriate for the determination of whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice.  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

In re Volkswagen, 545 F.3d at 315 (internal citations and punctuation omitted).

Although consideration of these factors is "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and "none can be said to be of dispositive weight."  Id. (citation omitted).  In particular, "[w]here related litigation is pending in the transferee court, the 'interest of justice' may dictate transfer notwithstanding any inconvenience to the parties and witnesses."  Doubletree Partners, L.P. v. Land America American Title Co., 2008 WL 5119599, at *6 (N.D. Tex. Dec. 3, 2008); see also Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986) ("The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and

may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result."). "When determining whether the proposed transferee venue is 'clearly more convenient,' the Federal Circuit has held that the 'existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.'" ColorQuick, L.L.C. v. Vistaprint Ltd., 2010 WL 5261198, at *1 (E.D. Tex. March 23, 2010) (quoting In re Volkswagen of Am., Inc., 566 F.3d 1349, 1351 (Fed. Cir. 2009)).

On balance, the private and public interest factors weigh in favor of transfer, and as explained above, related litigation pending in the consolidated actions in the District of Columbia has substantially advanced beyond the pleading stage. The Court should therefore transfer this case to the District of Columbia.

### A.   The Private and Public Interest Factors Weigh in Favor of Transfer to the District Court for the District of Columbia.

Because the private and public interest factors weigh in favor of transfer, the Court should transfer this action to the District of Columbia.[4]

Source of proof.  This factor is irrelevant here because this is a case seeking record review under the APA.  Plaintiff's objection that this factor would become relevant if Defendant

---

[4] The Court should reject Plaintiff's attempt to conflate the standards governing or motions to transfer venue and motions to dismiss for forum non conveniens.  See Pl. Opp. at 2 n.3, 4.  While the Fifth Circuit acknowledged that it had adopted the relevant *factors* appropriate for the determination of a motion to transfer venue from Gulf Oil, a forum non conveniens case, it stressed that the *dismissal standard* was sharply different.  In re Volkswagen, 545 F.3d at 314-15 & n.9.  In that case, the Fifth Circuit held that "the district court, in requiring Volkswagen to show that the § 1404 factors must substantially outweigh the plaintiffs' choice of venue, erred by applying the stricter forum non conveniens dismissal standard and thus giving inordinate weight to the plaintiffs' choice of venue."  Id. at 314-15.

-6-

were to move to dismiss for lack of standing is puzzling, given that motions to dismiss under

Fed. R. Civ. P. 12(b)(1) do not typically require live testimony from the plaintiff itself.  Plaintiff

also claims that "if there is an issue with respect to Defendant's use of the records gathered," this

factor could become relevant; however, Plaintiff fails entirely to explain what sort of "issue"

might potentially arise "with respect to Defendant's use of the records gathered" in this case.  Pl.

Opp. at 5.  Thus, the source of proof factor is neutral.

      <u>Availability of compulsory process to secure the attendance of witnesses</u>.  Plaintiff does

not claim that the "availability of compulsory process to secure the attendance of witnesses

factor" weighs against transfer, but concedes that it is "at best neutral." <u>Id.</u> at 5.  Given the fact

that this is a record review case, and live testimony is not only unnecessary but prohibited except

under the rarest of circumstances, this factor is irrelevant.

      <u>Cost of attendance for willing witnesses</u>.  Because this is a record review case, live

testimony is inappropriate.  Because the pertinent issue is the cost of attendance for *witnesses*, the

fact that Plaintiff, a corporation, does business in Texas is irrelevant.[5]  Thus, the cost of

attendance factor is neutral.

---

      [5] In any event, if a individual representing Plaintiff wished to attend a hearing in this action, by no means would that individual be "deprived of that right because of the need to travel from San Antonio to the District of Columbia."  Pl. Opp. at 5.  Because the NRA is "fully funding and supporting" this action, Pl. Opp. at 1, it could pay any travel costs incurred by a representative of Plaintiff who might wish to attend any such hearing.  Moreover, "[w]here related litigation is pending in the transferee court, the 'interest of justice' may dictate transfer *notwithstanding any inconvenience to the parties* and witnesses." <u>Doubletree Partners,</u>, 2008 WL 5119599, at *6 (N.D. Tex. Dec. 3, 2008) (emphasis added).  Additionally, the fact that counsel for Plaintiff filed an identical action on behalf of Arizona firearms dealers J & G Sales, Inc. and Foothills Firearms, Inc. in Washington, D.C. rather than in Arizona, certainly cuts against counsel's purported concern about proceedings being "easy, expeditious and inexpensive" for the nominal plaintiffs in these actions.  Pl. Opp. at 5.

<u>All other practical problems that make trial of a case easy, expeditious and inexpensive</u>. As noted previously, this is a record review case in which discovery is inappropriate, and can be resolved at the summary judgment stage; no "trial" is therefore necessary.  Moreover, having already initiated a related action in the District of Columbia, counsel for Plaintiff cannot contend that pursuing the case in that venue would be unduly inconvenient, or that it would be unable to bear the expense of litigation in that judicial district.  Plaintiff's counsel (except for local counsel) are based in Fairfax, Virginia, a suburb of Washington, D.C., and Defendant has his principal place of business in Washington, D.C.[6]  Thus, this factor weighs in favor of transfer.

<u>Administrative difficulties flowing from court congestion</u>.  As Plaintiff concedes, "this court is the more congested court" than the District Court for the District of Columbia, Pl. Opp. at 9; indeed, this district has been cited as a "judicial emergency" district due to its pending caseload and existing vacancies.  This factor thus weighs heavily in favor of transfer.

The relevance of the "court congestion" factor relates to the rapidity with which a case may reasonably be expected to proceed to final resolution.  See <u>Davis v. Signal Int'l., LLC</u>, 2011 WL 2462296, at *5 (E.D. Tex. June 17, 2011) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.") (quoting <u>In re Genentech, Inc.</u> 566 F.3d 1338, 1347 (Fed. Cir. 2009)); <u>Large Audience Display Sys., LLC v. Tennman Prods., LLC</u>, 2011 WL 1235354, at *5 (E.D. Tex. March 30, 2011) ("To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor.") (quoting <u>In re Genentech</u>, 566 F.3d at

---

[6] While it is true that the National Tracing Center may be located in West Virginia, Pl. Opp. at 2 n.2, the government action Plaintiff challenges was taken in Washington, D.C., where Defendant has his principal place of business.

1347).[7]  As explained above, the consolidated District of Columbia actions have already

proceeded beyond the preliminary injunction stage, and have been set for expedited briefing on

the merits.  See Ex. 2 at 7.  Thus, a transfer of this action will promote its swift resolution, as it

may be consolidated with the pending District of Columbia actions.  This factor thus weighs

strongly in favor of transfer, particularly in light of the advanced stage and expedited proceedings

in the District of Columbia.

      <u>Local interest in having localized interests decided at home</u>

      The issue here is one of federal regulation of firearms, and applies to federally-licensed

dealers not just in Texas but in four States.  The plaintiffs in all three cases are asking the courts

to resolve one central question: whether ATF correctly exercised its authority to require multiple

sales reporting of certain rifles within a specified time frame.  Moreover, the opposition brief's

purported concern for the fact that Plaintiff operates its business here is difficult to credit, given

that counsel for Plaintiff apparently had no such concern when they selected the venue for their

suit on behalf of Arizona firearms dealers J & G Sales, Inc. and Foothills Firearms, Inc., to be

Washington, D.C. rather than the District of Arizona.  Moreover, Plaintiff has presented no

evidence suggesting that its customers are located exclusively or even primarily in the State of

Texas.  10 Ring Precision's website represents that "[c]ustom pistol work," rather than the sale of

firearms, "is the mainstay of our business," and appears to contemplate that many of its

---

    [7] Plaintiff's response incorrectly conflates this factor with the "local interests" factor, and thus considers the latter factor twice.  See Pl. Opp. at 8-10.  The Fifth Circuit has made clear that in analyzing a motion to transfer venue, these are two separate, independent factors.  See, e.g., In re Volkswagen, 545 F.3d at 315 (listing the two as distinct factors).  It is the case law regarding the analysis of these two factors in the context of a motion to transfer venue that governs, not how Gilbert might have originally characterized these factors as they applied in the forum non conveniens context.

customers will be mailing their firearms to 10 Ring Precision to be serviced, rather than visiting in person.[8]  This factor is therefore neutral.

Familiarity of the forum with the law that will govern the case

This factor is neutral, and is not discussed by Plaintiff.

Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

This factor is neutral.

\* \* \* \* \*

In sum, two factors weigh in favor of transfer (one heavily so), and the remaining factors are at most neutral.  The analysis of these factors thus weighs in favor of transfer to the District of Columbia.

**B.      The Existence of Related Litigation in the District of Columbia Weighs Strongly in Favor of Transfer.**

"[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) ((quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)).  That is

---

[8] See Ten-Ring Precision, Inc., Services & Prices ("Please, *when sending your pistol or revolver in for work*, do not send [your] pistol or revolver in a factory or plastic box you wish to keep.  We store your handgun in a locked metal drawer cabinet where there is no room for a large plastic box.  In the three or more months your gun is here your plastic box could become lost or misplaced and we 'cannot be responsible for returning it to you.'  *The best way to send a handgun* is to wrap it in bubble wrap or soft packing cloth, place it in a cardboard box and surround it with crushed newspaper, packing peanuts or other material."), available at http://tenring.com/contact2.html (attached as Ex. 3) (emphasis added).

precisely the situation here.  Rather than contesting this conclusion – which it cannot – Plaintiff instead notes that the fact patterns in Ferens and Continental Grain were not identical to the factual circumstances in this case.  Pl. Opp. at 6.  But these factual distinctions are beside the point.  In these two cases, the Supreme Court made clear that the relevant concern was whether "two cases involving precisely the same issues are simultaneously pending in different District Courts," which is the situation presented here.  The complaint filed in the District of Columbia action is identical to the complaint filed here (except for the identities of the nominal plaintiffs), and thus raises precisely the same legal issues against the same defendant.  According to the Supreme Court, the resulting "wastefulness of time, energy and money" incurred by having two courts (here, three) address the very same legal issues is just the situation that "[Section] 1404(a) was designed to prevent."

Similarly, Plaintiff tries to distinguish the Fifth Circuit's decision in West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721 (5th Cir. 1985), on two grounds: (1) that the remedy granted in West Gulf was dismissal rather than transfer of venue, and (2) that the second-filed action involved the same parties and the same nucleus of operative facts.  Pl. Opp at 6-7.  But the fact that West Gulf dismissed the case rather than transferring venue is irrelevant because the Fifth Circuit expressly stated that transfer of venue was an available remedy in such circumstances.  See West Gulf, 751 F.2d at 729 n.1 ("In addition to outright dismissal, it sometimes may be appropriate to transfer the action or to stay it.").  The fact that Defendant is seeking the lesser remedy – a transfer of venue – rather than outright dismissal makes Defendant's motion more compelling, not less.  As for (2), that distinction is unavailing because

the rationale of West Gulf clearly embraces the facts presented here.[9]

West Gulf "h[e]ld that the district court [in a second-filed action] should have dismissed or stayed the action or should have transferred it to. . . the Southern District of New York where a pending action involved *closely related issues*." 751 F.2d at 722 (emphasis added). The district court in the second-filed action (filed in Texas) denied the defendant's motion to dismiss, and the Fifth Circuit held that this represented an abuse of discretion. Id. at 725, 728 (internal punctuation omitted). It noted that "[i]nevitably the district court's injunction intruded on" the authority of the judge in the first-filed action." Id. at 731. The Fifth Circuit also expressly stated that complete identity of parties was not required to warrant dismissal of the second-filed action. Id. at 731 n.5. Thus, it explained, the fact that not all of the defendants in the second-filed action were named in the first-filed action "is not a reason to deny the simultaneous pendency of two essentially identical actions." Id. It noted that the parties not named in the first-filed action "could be bound by any injunction the district court in [the first-filed action] might issue. Cf. National Health Federation v. Weinberger, 518 F.2d 711 (7th Cir. 1975) (second-filed action should be dismissed *even though different plaintiffs involved* in first-filed action)." Id. (emphasis added).

In short, West Gulf expressly found that complete identity of parties is not required to warrant dismissal of a second-filed action where the two actions raised "closely related issues." And by approving the Seventh Circuit's decision in National Health Federation and expressly

_____

[9] Plaintiff's similar attempt to distinguish DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591 (N.D. Tex. 2003), is similarly unpersuasive because the rationale of DataTreasury Corp. also embraces the factual situation presented here. See DataTreasury Corp., 243 F. Supp. 2d at 594 ("Transfer [of venue] is particularly appropriate where related cases involving the same issues are pending in another court.").

noting that that case involved different plaintiffs, the Fifth Circuit made clear that its holding in

West Gulf extended to cases involving different plaintiffs.  Nor is West Gulf the only Fifth

Circuit decision to have cited National Health Federation for this point of law.  In a later case, the

Fifth Circuit held:

> The fact that [defendant-counterclaimant] is not a party to the Original Action
> does not undermine the appropriateness of transfer in view of all the facts of this
> case.  Complete identity of parties is not required for dismissal or transfer of a
> case filed subsequently to a substantially related action.  See West Gulf, 751 F.2d
> at 731 n.5 (noting that incomplete identity of parties does not mandate that two
> "essentially identical" actions remain pending simultaneously where complete
> relief was nevertheless available in one forum and the missing parties probably
> could be made parties to the action in that forum); see also National Health Fed'n
> v. Weinberger, 518 F.2d 711 (7th Cir.1975) (dismissing second-filed action
> without prejudice even though it involved different plaintiffs than the first-filed
> action).

Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 951 (5th Cir. 1997).

National Health Federation warrants discussion because it was cited favorably by two

Fifth Circuit decisions for the same point of law, and because it involved a very similar situation

to that presented here.  Two different sets of plaintiffs filed suit against the same government

defendant challenging the same action – namely, the issuance of two FDA regulations.  518 F.2d

at 712.  The court in the second-filed action dismissed, and the Seventh Circuit affirmed.  Id.

Noting that "in the exercise of its discretion the court may dismiss a declaratory or injunctive suit

if the same issue is pending in litigation elsewhere," and that "the issues raised in both

complaints are identical," the Seventh Circuit found that "dismissal is particularly appropriate for

this complaint."  Id. at 712-13.  The fact that "the plaintiffs here are different plaintiffs from

those involved" in the first-filed action did not alter the Seventh Circuit's analysis.  Id. at 714.  It

explained that, among other things,

counsel for plaintiffs, prior to filing the suit here, were aware of the [first-filed suit]. In fact, the [National Health Federation], by same counsel as are present here, appeared as amicus curiae . . .

In view of these circumstances, it seems to us that this suit could have been as easily brought in [the venue for the first action], and the filing of the complaint here smacks of gamesmanship. . . . No reason is given for not filing in that district which might then have led to a consolidation of the suits. We do not think that the plaintiffs should be allowed to so easily avoid real involvement in litigation in one forum, and then impose on a second federal forum the burden of considering anew the same issues.

Id.

Like the organizational plaintiff in National Health Federation, the NRA's decision to file complaints raising identical issues in the District of Columbia, New Mexico, and in this Court "smacks of gamesmanship." As explained above, the NRA has repeatedly acknowledged that it is the driving force behind these lawsuits and that it was responsible for filing them.[10] There is thus no reason why the present case should not have been filed in the District of Columbia, which would have allowed for consolidation of the suits. The Court should therefore transfer this action to the District of Columbia for consolidation with the pending actions in that venue.

Moreover, it is irrelevant that, as Plaintiff notes, actions are sometimes brought in different venues challenging the same government action. Pl. Opp. at 7 & n.5. Here, we have

---

[10] NRA-ILA issued three separate statements in the few weeks after the demand letter was announced – and before the suits were filed – asking federal firearms licensees ("FFLs") who received the letter to contact NRA-ILA. See Ex. 4. The timing of these statements strongly suggests that NRA did not merely fund these cases, but also solicited (and perhaps selected) FFLs to serve as nominal plaintiffs in these actions. See also NRA News, NRA to Fight Illegal BATFE Reporting Requirement (July 18, 2011), at 1:50, available at http://home.nra.org/#/nranews (Follow "Issues" hyperlink, then "BATFE," then "View videos") (Interviewer: "[NRA-ILA Executive Director] Chris Cox has said, as soon as the demand letters go out, as soon as we find, you know, a party to this, the NRA is gonna sue. John Frazer [NRA-ILA Director of Research and Information]: "That's right. And we've asked, in the alert that we put out, we asked dealers who actually get these letters – which probably won't happen for a week or two – but we've asked dealers who actually get these letters and think that they're subject to this requirement to contact us and provide copies and so forth.").

more than just two cases challenging the same government action.  These cases assert identical claims against the same defendant in identically-phrased complaints.  Under such circumstances, a transfer of venue is warranted to prevent duplicative litigation.

Additionally, permitting three identical lawsuits to be separately litigated could lead to inconsistent judgments.  The District Court for the District of Columbia has denied the plaintiffs' motions for a preliminary injunction.  See Ex. 2 at 7.  If this Court were to issue a preliminary injunction, it would apply only to Plaintiff, leading to inconsistent implementation of ATF's multiple sales reporting requirement.  Plaintiff's rejoinder that such inconsistent judgments resulting from duplicative litigation are perfectly appropriate, Pl. Opp. at 8, was expressly rejected by the Fifth Circuit in West Gulf.  In that case, "[w]hen informed that there would be a risk of conflicting decisions if the court [in the second-filed action] were to make any findings whatsoever, the district court responded: 'Happens all the time,'" and entered a preliminary injunction.  751 F.2d at 725.  As the Fifth Circuit held, this constituted an abuse of discretion:

> The union defendants frankly advised the district court of the nature and circumstances of the New York action, and the parties and the court appeared to appreciate that the core issue in the New York action was the same as the core issue in the Texas action.  The district court implicitly indicated that it would not resolve the declaratory judgment or permanent injunction issue in the Texas action, leaving the questions they involved to [the judge in the New York action].  Nevertheless, the district court issued a preliminary injunction in the Texas action, an action in which it contemplated no further orders or decisions, on the apparent theory that the preliminary injunction would not affect the New York action and, indeed, would preserve the status quo so that a decision there would be meaningful.
>
> The central point, however, is that it was up to [the judge in the New York action] to determine whether an injunction was necessary. . . .
>
> *Inevitably the district court's injunction intruded on* [the first judge's] *authority*.  Despite the present district court's laudable willingness to avoid interference with the New York action, its finding that West Gulf is likely to succeed in fact intruded upon the New York court's decisional authority as to whether or not to grant injunctive or other relief . . .

Id. at 730-31 (emphasis added) (footnote omitted).  Like the district judge in the Texas action,

Plaintiff here argues that the Court should not be concerned about potentially inconsistent results

in two essentially identical suits, as it allegedly "[h]appens all the time."  The Court should reject

this argument, as the Fifth Circuit did.  The Court in the consolidated District of Columbia

actions has already determined that preliminary injunctive relief is not warranted here, and a

decision to the contrary by this Court would inevitably interfere with the scope of that Court's

decisional authority.  The Fifth Circuit has expressly cautioned courts to avoid such a result.[11]

In sum, to avoid wasteful and duplicative litigation, pretermit the possibility of

inconsistent judgments, and to promote judicial economy, as well as the parties' (and the

public's) interest in a speedy resolution of NRA's claims against Defendant, this case should be

transferred to the District of Columbia, where it and the pending District of Columbia actions

(plus the New Mexico lawsuit) can be consolidated and decided by a single federal court.

**C.     The Court Should Also Transfer This Case Because the First-to-File Rule Applies.**

Though Plaintiff contends that the Fifth Circuit's "first-to-file" rule does not support

transfer of this case to the District of Columbia, it has not – and cannot – dispute that the two

actions "involve closely related questions, common subject matter, or core issues that

substantially overlap." " O'Hare v. Vulcan Capital, L.L.C., 2007 WL 996437, at *2 (W.D. Tex.

---

[11] Finally, Plaintiff's truncated quotation from Convergence Technologies (USA), LLC. v.
Microloops Corp., 711 F. Supp. 2d 626, 641 (E.D. Va. 2010), see Pl. Opp. at 8 n.6, omits key
language that undermines Plaintiff's argument.  See 711 F. Supp. 2d at 641 ("To begin with,
although a plaintiff's choice of its home forum is ordinarily given substantial weight in the
transfer analysis, *this factor is not controlling*, and indeed courts have granted transfers pursuant
to § 1404(a) *even where a plaintiff was a resident of the district* in which it originally filed suit.")
(citing cases) (footnote omitted) (emphasis added).

Feb. 20, 2007) (citing <u>Save Power</u>, 121 F.3d at 950, and <u>Texas Instruments Inc. v. Micron
Semiconductor, Inc.</u>, 815 F. Supp. 994, 997 (E.D. Tex. 1993)).  Indeed, the claims presented in
the present case and the District of Columbia action not only "substantially overlap;" they are
identical.  <u>Kinetic Concepts, Inc. v. Connetics Corp.</u>, 2004 WL 2026812, at *3 (W.D. Tex. Sept.
8, 2004).  As explained above, both cases advance the same claims against the same defendant,
and the two complaints are indistinguishable, save for the caption and identity of the respective
plaintiffs.

Rather than contest the similarity of the two actions, Plaintiff unpersuasively asserts that
<u>Cadle Company v. Whataburger of Alice, Inc.</u>, 174 F.3d 599 (5th Cir. 1999) does not support
transfer to the District of Columbia because "the parties in the instant case and in the District of
Columbia cases are not the same."  <u>See</u> Pl. Opp. at 10.  As explained above, this fact alone does
not make transfer to the District of Columbia inappropriate.  When examining the first-to-file
rule, the Fifth Circuit has explained that "[c]omplete identity of the parties is not required for
dismissal or transfer of a case filed subsequently to a substantially related action."  <u>Save Power</u>,
121 F.3d at 951 (citing <u>West Gulf</u>, 751 F.2d at 728).  And as also explained above, in so holding,
the Fifth Circuit took note of <u>National Health Federation</u>, 518 F.2d 711 (7th Cir. 1975), a
Seventh Circuit decision upholding the dismissal of a second-filed action, even though it
involved different plaintiffs than the first-filed action.  <u>Save Power</u>, 121 F.3d at 951.  <u>Save
Power</u>'s rationale is particularly persuasive here, as 10 Ring Precision's interests are sufficiently
represented in the District of Columbia action by Plaintiffs J & G Sales Ltd. and Foothills
Firearms, LLC.  <u>See id.</u> (noting that transfer was appropriate because the interest of the
defendant-counterclaimant in the second-filed action "was represented to the court [in the

Original Action] via [the co-plaintiff in the Original Action], which faced the likelihood of being

put out of business if Save Power were not enjoined from foreclosure.  The fact that [defendant-

counterclaimant] was not an active participant in the preliminary injunction hearing does not alter

our analysis of the relevant factors").  Plaintiffs J & G Sales Ltd. and Foothill Firearms, LLC

have similar, if not the same, economic interest in the outcome of this litigation.  The three

plaintiffs are funded by a single entity, represented by the same counsel, raise the same claims

and seek the same relief from the courts in which they filed suit.  For these reasons, Plaintiff's

reliance on the fact that 10 Ring Precision is not a "named plaintiff" in the suit pending in the

District of Columbia is misplaced.

       In addition, Plaintiff's contention that "there is no possibility of . . . rulings which may

trench upon the authority of sister courts" is incorrect.  As explained above, the District of

Columbia denied motions for preliminary injunctions in the consolidated District of Columbia

actions, stating that Plaintiffs had not demonstrated a sufficient "likelihood of irreparable harm,"

absent the issuance of a preliminary injunction.  See Ex. 2 at 7.  Counsel for Plaintiff has

indicated his intent to seek preliminary relief in this Court as well, and permitting both cases to

proceed simultaneously risks the possibility of an inconsistent decision as to whether a

preliminary injunction should issue.  As noted above, such a result that would "trench upon the

authority" of the District Court for the District of Columbia.  The possibility of an inconsistent

ruling on Plaintiff's preliminary injunction motions would also compromise ATF's uniform

implementation of the multiple sales reporting requirement, and could subject FFLs operating in

two or more of the Southwest Border States to conflicting obligations.  Finally, transferring this

case would also pretermit the possibility of an inconsistent judgment as to whether ATF

exceeded its authority under 18 U.S.C. § 923(g)(5)(A) by requiring the reporting of multiple sales of certain rifles to unlicensed individuals within five consecutive business days.

In sum, Plaintiff's arguments against transfer under the first-to-file rule lack merit and the Court should transfer this case to the District of Columbia "in the interest of comity and sound judicial administration." Cadle Co., 174 F.3d at 603.

## II.    IF THE COURT DECLINES TO TRANSFER THIS CASE, IT SHOULD STAY PROCEEDINGS PENDING RESOLUTION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN THE DISTRICT OF COLUMBIA ACTIONS.

Plaintiff's contention that a stay "would wholly prevent Plaintiff from proceeding at all because it is not a litigant in the case in the District of Columbia," Pl. Opp. at 12, misses the point of a stay.  A stay does not operate to dismiss the action; it simply absolves the parties' attorneys and the federal court system of the burden of simultaneously litigating and resolving identical issues on an expedited schedule in two (or three) separate forums.  See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) (stay permits court to promote "economy of time for itself, for counsel, and for the parties").  If this Court declines to transfer this case to the District of Columbia and orders a stay, once the court in the District of Columbia rules on Defendant's motion for summary judgment (which that court has indicated it will do in short order), the parties can proceed to litigate this action and accord that court's decision the weight it is due as persuasive authority.

Moreover, Plaintiff can hardly contend that its interests will not be represented in the District of Columbia action, given that the plaintiffs in that case include two other FFLs represented by the same attorneys, funded by the same entity, who filed an identical complaint and will presumably raise the exact same arguments in that case.  See Wolf Designs, 341 F.

-19-

Supp. 2d at 645 n.4 (where defendant in one action is represented by the same attorneys as defendant in second action, "attorneys can conduct discovery in the [first] action with a view toward this case" making any disadvantage to second defendant "minimal").  While Plaintiff has not contended that its case raises unique facts or arguments that will not be presented in the District of Columbia litigation, to the extent such facts or arguments exist, Plaintiff's counsel can keep them in mind in litigating the District of Columbia actions, and focus on them at the appropriate time.  Accordingly, a stay is warranted here if the Court does not transfer the case.

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in Defendant's opening brief, the Court should transfer this case to the United States District Court for the District of Columbia.  In the alternative, this Court should stay the action at least until the District of Columbia court disposes of that case.

Dated: September 6, 2011                              Respectfully submitted,


                                                      TONY WEST
                                                      Assistant Attorney General

                                                      JOHN MURPHY
                                                      United States Attorney

                                                      JOHN F. PANISZCZYN (Texas Bar No. 15443855)
                                                      Assistant United States Attorney

                                                      ____/s/ Daniel Riess_____
                                                      SANDRA M. SCHRAIBMAN
                                                      Assistant Director
                                                      DANIEL RIESS (Texas Bar No. 24037359)
                                                      JESSICA LEINWAND
                                                      LESLEY FARBY
                                                      Trial Attorneys
                                                      U.S. Department of Justice
                                                      Civil Division, Rm. 6122

20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

On September 6, 2011, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Western District of Texas, using the electronic case filing

system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record

electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

  /s/ Daniel Riess
Daniel Riess