IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| 10 RING PRECISION, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| ROBBIE BETTS d/b/a | § | |
| Golden State Tactical | § | |
| | § | |
| Intervenor- | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. SA-11-CA-663 |
| | § | |
| B. TODD JONES, Acting Director, | § | |
| Bureau of Alcohol, Tobacco, | § | |
| Firearms and Explosives | § | |
| | § | |
| Defendant | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff 10 Ring Precision, Inc., a federally licensed dealer in firearms based in San Antonio, Texas, filed this civil action for declaratory and injunctive relief on August 5, 2011.  The complaint seeks a declaration that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("the Bureau") has exceeded its authority by demanding that the Plaintiff and other firearms dealers report information relating to the sales of certain rifles.  It also requests the Court to enjoin the Director of the Bureau from taking any action to force compliance with the demand letter.  On February 28, 2012, another firearms dealer based in California, Golden State Tactical, was allowed to intervene as a Plaintiff. The complaint in intervention (Docket No. 31) contains the same

essential allegations and requests the same relief.  The Plaintiff, the Intervenor-Plaintiff, and the Defendant have all moved for summary judgment.  The case is now ripe for decision.

Daily news coverage has made most Americans aware that criminal gangs in Mexico are at war with each other and with law enforcement officials, and that innocent civilians have suffered casualties along with the direct participants.  Although this drug related violence south of the border has not yet spilled over into the United States, there is a perceived risk that it could do so in the future.  It is common knowledge that a high percentage of the lethal firearms used by the drug gangs are purchased in the United States, and that semi-automatic rifles capable of firing a large number of rounds in rapid fire succession are the weapons of choice among gang members.

As the agency responsible for enforcing most federal firearms laws, the Bureau took action in 2011 to seek more information about this specific form of trafficking in firearms.  On July 12, 2011, the Bureau sent a letter to all federally-licensed firearms dealers in the four states bordering Mexico (Texas, New Mexico, Arizona, and California).  The letter required those dealers to submit reports whenever, on the same day or within five business days, they sold (a) two or more (b) semi-automatic rifles (c) of a caliber greater than 22 caliber (d) which were capable of accepting a detachable magazine.  The Plaintiffs contend that the Bureau

2

exceeded its authority and acted arbitrarily and capriciously in issuing this demand letter.

The law requires every licensed firearms dealer to maintain records of all firearms sales, including the identity of the person buying the firearm.  18 U.S.C. § 923(g).  It also authorizes the Bureau[1] to issue a letter requiring any licensed dealers to submit "for periods and at the times specified in such letter, all record information required to be kept by this chapter ...."  18 U.S.C. § 923(g)(5)(A).  The Defendant contends that this statute confers the authority to issue the demand letter which the Plaintiffs oppose.  For their part, the Plaintiffs insist that they are not required to comply with the demand letter because: (1) it is not authorized by § 923(g)(5)(A); (2) it does not call for "information required to be kept by this chapter"; and (3) the demand for information is prohibited by other firearms laws and by the Appropriations Act.

As to the first point, the Court holds that demand letters of the kind involved in this case are clearly authorized by § 923(g)(5)(A).  Although the reported cases are few in number, they are unanimous in upholding the authority of the Bureau to issue such letters.  For example, in **RSM, Inc. v. Buckles**, 254 F.3d

---

[1] The statute actually confers "demand letter" authority upon the Attorney General, but he has delegated that authority to the Bureau.  28 C.F.R. § 0.130(a)(1).

61 (4th Cir. 2001), the Bureau issued a demand letter to 41 licensed dealers who were deemed to have been "uncooperative" with firearms trace requests.[2]   The demand letter required those dealers to submit detailed information concerning their firearms purchases and sales for the previous three years, and on a monthly basis thereafter.  The Court of Appeals for the Fourth Circuit upheld the authority of the agency to issue the letters, holding that they were "narrowly tailored to a specific grant of positive statutory authority."  **RMS, Inc.**, 254 F.3d at 69.

The same Court of Appeals reached a similar conclusion in **Blaustein & Reich, Inc. v. Buckles**, 365 F.3d 281 (4th Cir. 2004). In that case, the Bureau issued 450 demand letters to licensed dealers demanding information concerning their acquisition of second-hand firearms in the year 1999.  Those particular dealers were selected because each one had traced to it ten or more "crime guns"[3] with a time-to-crime of three years or less. The stated purpose of the demand was to obtain information to use in tracing second-hand firearms recovered at crime scenes.  The Fourth Circuit held that the demand letter was authorized by § 923(g)(5)(A), and that it did not violate the statute or any of its implementing

---

[2] Title 18 U.S.C. § 923(g)(7) imposes a duty on licensed firearms dealers to respond to such requests within 24 hours.

[3] A firearm recovered at a crime scene, or seized from a felon or other prohibited person.

4

regulations. **Blaustein**, 365 F.3d at 292.

The next relevant opinion came from the Ninth Circuit in **J&G Sales, Ltd. v. Truscott**, 373 F.3d 1043 (9th Cir. 2007). Once again, a firearms dealer complained about a letter demanding a report on its acquisition of second-hand firearms.[4] The appellant had been selected as a recipient because 15 or more firearms with a time-to-crime of three years or less had been traced to its stores. In an opinion by Justice O'Connor, sitting by designation, the Court held that § 923(g)(5)(A) authorized the issuance of the demand letter, and that the selection of J&G to receive a letter was not arbitrary or capricious. **J&G Sales, Ltd.**, 473 F.3d at 1053.

The opinion most on point is the one issued most recently, because it involves the same Bureau demand letter at issue in this case. In **National Shooting Sports Foundation, Inc. v. Jones**,[5] 2012 WL 112206 (D. D.C. 2012), the District Court for the District of Columbia rejected claims that the Bureau had exceeded its authority or acted arbitrarily and capriciously in issuing this demand letter. The Court recognized that the universe of recipients of

---

[4] The demand letter was issued in 2003, and sought record information for the year 2002. It was essentially identical to the letter at issue in **Blaustein** but for a different year.

[5] Three cases were consolidated by the District Court. The lead plaintiff, National Shooting Sports Foundation, Inc. was joined by two firearms dealers, J&G Sales, Ltd. and Foothills Firearms LLC, both based in Arizona.

5

the demand letter in this case was much larger than those involved in the disputes refereed by the Fourth and Ninth Circuits.  The 2011 demand letter was sent to some 8,500 federally-licensed firearms dealers, representing more than 15 percent of all licensees nationwide.  According to the Court, however, the numbers did not affect the authority of the Bureau to issue the demand letter.  The Court held specifically that § 923(b)(5)(A) is not ambiguous; that it confers the authority necessary to issue the demand letter; that the Bureau's authority was not limited by other provisions of the statute or by the Consolidated Appropriations Act of 2010;[6] and that the Bureau's decision to issue the letter was not arbitrary or capricious.  This Court agrees with the holding in all respects.  Section 923(g)(5)(A) constitutes a specific grant of authority to the Bureau to issue demand letters to licensed firearms dealers requiring them to report record information deemed essential to carrying out the mission of the Bureau.

The Plaintiffs dispute the finding of the District of Columbia court that the records called for by the letter fall within the category of "record information required to be kept."  They concede that all dealers are required to maintain records of rifle purchases, but insist that those records only identify "the name of

---

[6] Pub. L. No. 111-117, 123 Stat. 3034, 3128 (2009), continued in effect by the Continuing Appropriations Act of 2011, Pub. L. No. 112-10, 125 Stat. 38, 102-03 (2011).

the manufacturer and importer (if any), the model, serial number, type, and the caliber or gauge" of the rifle purchased.  27 C.F.R. 478.125(e).    According to the Plaintiffs, the dealer is not required to record whether the rifle sold is semi-automatic, nor its type of ammunition-feeding source (*i.e.,* whether it is capable of accepting a detachable magazine). This argument is disingenuous. Any professional firearms dealer worth his salt who knows the manufacturer and model number of a given rifle should be able to tell with a high degree of certainty whether it fits within the reportable category.   Having already been placed on alert by the demand letter itself, a licensed firearms dealer is most unlikely to confuse a modern semi-automatic rifle capable of accepting a detachable magazine with a Winchester 73.    In other words, compliance with the demand letter calls for no more than a distillation of records required to be kept by statute and regulation.

The same reasoning applies equally to the buyer's side of the transaction.   Licensed dealers are required to obtain from every buyer a Form 4473, which reflects the buyer's name, address, and other identifying information.  The Form 4473 is a "record required to be kept" by each licensed dealer.   27 C.F.R. § 478.124.   The demand letter simply calls upon the dealer to report the purchase of two or more qualifying rifles by the same individual on the same day, or within a period of five days.  If the two purchases are not

7

on the same day, the reporting thereof arguably requires some extra effort on the part of the dealer, but the information reported still falls within the definition of record information required to be kept (the Forms 4473).

The Plaintiffs next seek to raise a straw man so that they can proceed to knock it down. They contend that enforcement of this demand letter will lead to the creation of something Congress has outlawed: a "national firearms registry." The Court finds that argument unpersuasive.

It is undisputed that Congress has forbidden the establishment of any national "system of registration of firearms, firearms' owners, or firearms' transactions or dispositions ...." 18 U.S.C. § 926(a). For good measure, Congress has attached a rider to every appropriation bill since 1978 forbidding the use of appropriated funds to facilitate the creation of such a registry. **RSM, Inc.,** 254 F.3d at 67. That said, it is clear that the creation of a national registry was not the intent and purpose of the demand letter in this case. Instead, its purpose was to attempt to get a better handle on the traffic in murder weapons headed south across the border. Furthermore, compliance by dealers with the demand letter would not, in fact, lead to the establishment of a national registry of firearms or firearms owners. The Court notes that (1) the letter was directed to dealers in only four states out of 50; (2) the demand is for information concerning only a very limited

8

category of long guns; (3) reporting is triggered only if the same individual buys two or more on the same day or within a few days. Although the information collected through this initiative may turn out to be voluminous, it pales by comparison with the statutorily mandated reporting of multiple handgun sales, which has a nationwide scope, and has been in force for decades. In fact, it is significant to note that the handgun reporting requirement (§ 923(g)(3)(A)), the Bureau's demand letter authority (§ 923(g)(5)(A)), and the prohibition against the establishment of a national system of registration of firearms, firearms' owners, or firearms' transactions (§ 926(a)) were all enacted by Congress in the same public law, the Firearm Owners Protection Act of 1986, Pub. L. 99-308, 100 Stat. 449 (1986). Contending that one is in direct conflict with another is simply not credible.

Finally, the Court finds that the Bureau's action was not arbitrary or capricious. The scope of review of the action of an administrative agency under the arbitrary and capricious standard is a narrow one, and does not authorize the Court to substitute its judgment for that of the agency. **Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mutual Auto Ins. Co.**, 463 U.S. 29, 43 (1983). The question is whether the decision of the agency was based on a consideration of the relevant factors, and whether there has been a clear error of judgment. **Marsh v. Oregon Natural**

**Resource Council**, 490 U.S. 360, 378 (1989).

In this case, the Bureau had before it the following facts: (1) gang violence related to drug trafficking is rampant in Mexico; (2) semi-automatic rifles of a certain kind and capability are the weapons of choice among gang members; (3) many of these rifles are purchased from licensed firearms dealers in the United States by straw purchasers; and (4) these purchases are believed to be concentrated in those states which are adjacent to the Mexican border. It was a rational response to these facts for the Bureau to conclude that gathering transaction information regarding the purchases of a very specific category of firearms might render more effective the tracing of firearms involved in or relating to the commission of federal offenses. In the words of the Supreme Court, the Bureau has shown "a rational connection between the facts found and the choice made." **State Farm**, 463 U.S. at 43. The Plaintiffs have failed to sustain their burden of establishing that the Bureau's action was arbitrary or capricious.

IT IS THEREFORE ORDERED that the Defendant's motion for summary judgment be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that the motions for summary judgment of the Plaintiff and the Intervenor-Plaintiff be, and they are hereby, DENIED.

IT IS FURTHER ORDERED that Judgment be, and it is hereby, ENTERED in favor of the Defendant, and that the Plaintiffs take

10

nothing by their suit.

IT IS FURTHER ORDERED that the motion of Plaintiff 10 Ring Precision, Inc. for a declaratory judgment in its favor be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that the Plaintiffs' motion for a preliminary and permanent injunction, enjoining enforcement of the demand letter issued by the Bureau, be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that the Plaintiff and the Intervenor-Plaintiff pay the costs of suit herein incurred.

SIGNED AND ENTERED this 2nd day of July, 2012.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE

11